

ENTERED
06/29/2010

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 09-38023 |
| EMILIA D DONSON, | § | Chapter 11 |
| Debtor(s). | § | Judge Isgur |

## MEMORANDUM OPINION

Stephen Donson, the principal creditor in Emilia Donson's chapter 11 reorganization, initiated an adversary proceeding to determine the dischargeability of his claims. Upon the agreement of the parties, the Court abated the adversary proceeding until August 18, 2011. Before and after the abatement order, Emilia Donson filed objections to Stephen Donson's proof of claim in her main bankruptcy case. The Court initially considered the objections in the ordinary course, but the Court now overrules the objections because they violate Bankruptcy Rules of Procedure 3007(b) and 7001(6).

### Jurisdiction and Venue

This Court has jurisdiction over the proceeding under 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b).

### Background

Emilia Donson filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code on October 27, 2009. Stephen Donson, Emilia Donson's ex-husband and largest creditor, timely filed a proof of claim for $415,637.60.

On February 5, 2010, Stephen Donson initiated an adversary proceeding to determine the dischargeability of his claim. In his complaint, Stephen Donson alleged that his $415,637.60

claims constitute non-dischargeable domestic support obligations pursuant to §§ 523(a)(5) and (a)(15) of the Bankruptcy Code.

Emilia Donson did not answer Stephen Donson's complaint.  Instead, on March 23, 2010, Emilia Donson filed an objection to Stephen Donson's proof of claim in her main bankruptcy case.  The objection dealt with the same issue as the adversary proceeding that Stephen Donson initiated over five weeks earlier: whether Stephen Donson's claims are non-dischargeable domestic support obligations.

On March 29, 2010, the parties filed a stipulated agreement concerning Emilia Donson's objection.  The stipulation was filed solely for the purpose of voting on Emilia Donson's Second Modified Chapter 11 Plan.  It provided that, under Emilia Donson's plan, Stephen Donson's claims would be treated as (1) a $12,690.00 class 2 priority claim, (2) and a $402,947.60 class 5 general unsecured claim.  The agreement also reserved both parties' rights to fully litigate Stephen Donson's claims post-certification:

> [Stephen and Emilia Donson] reserve all rights, defenses and arguments regarding the amounts, priority and dischargeability of Donson's claims.  Nothing in this stipulation constitutes or shall be deemed to constitute an agreement or admission by either [Stephen Donson or Emilia Donson] regarding the amounts, priority, and dischargeability of Donson's claims.

Emilia Donson's Third Modified Chapter 11 Plan was also filed on March, 29, 2010.  In a footnote, the plan describes the disputed nature of Stephen Donson's claims:

> Stephen Donson believes, but Debtor does not, that most of his claims are domestic support obligations, and are first priority claims under 11 U.S.C. § 507(a)(1).  Nothing in this Plan, or in any order confirming this Plan, shall allow or disallow Stephen Donson's claims or determine their priority or dischargeability, all of which will be addressed by separate order of this Court.

The Court held a confirmation hearing on March 31, 2010. At the hearing, Emilia Donson stated that the purpose of the footnote was to acknowledge that the adversary proceeding would determine the dischargeability of Stephen Donson's claims.

Immediately after the confirmation hearing, the Court held a status conference on the adversary proceeding between Stephen and Emilia Donson. It was at this time that the Court granted the parties' request to abate the adversary proceeding until August 18, 2011. The abatement was granted in order to provide Emilia Donson with sufficient time to sell her largest asset, a home located in Veracruz, Mexico ("Veracruz Residence"). Both parties believed that the sale of the Veracruz Residence would enable Emilia Donson to pay all of her creditors in full. If this belief proved correct, then the adversary proceeding concerning the dischargeability of Stephen Donson's claims would have been unnecessary. The Court's order further stated that either party may move to terminate the abatement at any time.

On April 15, 2010, three days after the plan was confirmed, Emilia Donson filed a second objection to Stephen Donson's claims in the main bankruptcy case. The objection again focused on whether Stephen Donson's claims were non-dischargeable domestic support obligations. A hearing on the matter was set for May 17, 2010.[1] Stephen Donson did not respond to the objection, nor did he attend the May 17, 2010, hearing.[2] Shortly after the hearing, the Court

---

[1] Emelia Donson's objection argued that the plan's general reservation to object to any claim reserved her right to object to Stephen Donson's claims post-confirmation. In her memorandum to support the objection, Emilia Donson noted that all her pleadings reserved the right to object to Stephen Donson's claim. Furthermore, the memorandum referenced, without explanation, the footnote to Stephen Donson's claim. Use of the footnote as grounds to object to Stephen Donson's claim in the main bankruptcy case is inconsistent with her description of the footnote at the plan confirmation hearing. As set forth below, since the dischargeability of Stephen Donson's claim must be litigated in an adversary proceeding, the Court need not consider whether the plan successfully reserved Emilia Donson's right to object post-confirmation.

[2] Stephen Donson claims that the objection was not served on him, personally, or on his counsel. The objection has a certificate of service indicating that it was served on both Stephen Donson and his counsel. Since the Court overrules Emilia Donson's objection, the Court finds it unnecessary to determine if it was properly served upon Stephen Donson.

ordered the parties to submit briefs on the issue of whether the plan reserved the right to object to Stephen Donson's claim post-confirmation.

As discussed below, the Court finds that it was improper for Emilia Donson to file objections to Stephen Donson's claims in her main bankruptcy case. Emilia Donson should have moved to terminate the Court's order abating the adversary proceeding and litigated the dischargeability issue in the adversary arena.

### Federal Rules of Bankruptcy Procedure 3007 and 7001

In 2007, Federal Rule of Bankruptcy Procedure 3007 was substantially amended. Subsection (b) was added to Rule 3007 to replace the last sentence of what is now subsection (a). Rule 3007(b) provides that a "party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." FED. R. BANKR. P. 3007(b).

Rule 7001 lists the type of actions that require an adversary proceeding. FED. R. BANKR. P. 7001. Rule 7001(6) states that an action "to determine the dischargeability of a debt" must be made in an adversary proceeding. FED. R. BANKR. P. 7001(6). Because Rule 7001(6) covers disputes over the dischargeability of a debt, Rule 3007(b) precludes a debtor from objecting to a claim's dischargeability in the main bankruptcy case. Such objections must be made in an adversary proceeding.

Recent case law, which has strictly interpreted the interaction between Bankruptcy Rules 3007(b) and 7001, reinforces the Court's conclusion. In *J.S. II*, for example, the debtor filed an equitable subordination counterclaim in the main bankruptcy proceeding. *In re J.S. II, L.L.C.*, 389 B.R. 570, 587-88 (Bankr. N.D. Ill. 2008). The court held that Rules 3007(b) and

7001(8), together, mandate that claims for equitable subordination be pursued in an adversary proceeding. *Id.*

The court in *Eads* performed the same analysis and reached the same conclusion. *In re Eads*, 417 B.R. 728, 740-741 (Bankr. E.D. Tex. 2009). *Eads* dealt with a debtor's objection to the validity of a creditor's lien. *Id.* The objection was filed in the main bankruptcy case. *Id.* The creditor did not answer the objection, and the court initially entered a default order dismissing the creditor's claim. *Id.* The court later overturned the order because it contravened Rules 3007(b) and 7001(2). *Id.* The court found that, under Rules 3007(b) and 7001(d), an action to avoid a lien must be commenced as an adversary proceeding and may not be brought as an objection in the debtor's main bankruptcy case. *Id.*

## Emilia Donson's Objections

The parties have not raised the issues surrounding Rule 3007(b) in this case. Instead, the parties have focused on whether the plan reserved Emilia Donson's right to object to the claims post-confirmation of the plan. While no party raised the issue, the Court has an obligation to comply with the Federal Rules of Bankruptcy Procedure and raises the issue *sua sponte*. *See United Student Aid Funds, Inc. v. Espinoza*, 130 S. Ct. 1367, 1381 (2010) (noting that bankruptcy courts should enforce the Bankruptcy Code's requirement that a debtor initiate an adversary proceeding to determine the dischargeability of a student loan, even if the creditor fails to appear and object).

The Court finds that Emilia Donson's objections to Stephen Donson's claims should not have been filed in her main bankruptcy case. Both of Emilia Donson's objections argued against the classification of Stephen Donson's claims as non-dischargeable domestic support

obligations.[3]  Under Rules 3007(b) and 7001(6), a dispute regarding the dischargeability of a debt must be resolved in an adversary proceeding.  Thus, in this case, Emilia Donson's objections should have been voiced in the adversary proceeding that Stephen Donson initiated before both of Emilia Donson's objections were filed.

This conclusion is all the more necessary in light of Emilia Donson's consent to the Court's abatement order.  It is inequitable for Emilia Donson to consent to abatement and then, just weeks later, initiate what is, in essence, the same lawsuit.

Accordingly, the Court overrules Emilia Donson's objection.  Emilia Donson is nevertheless free to move to reopen the adversary case to determine whether Stephen Donson's claims constitute domestic support obligations, but she must justify the termination of the abatement order in light of the reasons for which it was originally imposed.

## Conclusion

Objections to the dischargeability of a claim must be filed in an adversary proceeding. By filing her objections in the main bankruptcy case, Emilia Donson violated Rule 3007(b). Accordingly the Court overrules Emilia Donson's objection.  A separate order will be issued.

SIGNED **June 28, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[3] While Emilia Donson's objections never explicitly mention dischargeability, a domestic support obligation is, by definition, excluded from the general discharge. *See* 11 U.S.C. § 523(a)(5)  Thus, by objecting to the classification of Stephen Donson's claims as domestic support obligations, Emilia Donson was objecting to the non-dischargeability of his claims.